**RUBIN LLC**
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel:  212. 390.8054
Fax: 212.390.8064
E-mail:  prubin@rubinlawllc.com
Paul A. Rubin (PR-2097)

*Attorneys for K&K Developers, Inc.*

**UNITED SATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| LETICIA ROJAS, | : | Case No. 18-19362(VFP) |
| | : | |
| Debtor. | : | Hearing Date: Sept. 18, 2018 at 11:00 a.m. |
| | : | |

**RESPONSE OF K&K DEVELOPERS, INC.TO MOTION OF THE
ACTING UNITED STATES TRUSTEE FOR AN ORDER
CONVERTING THE CASES TO CHAPTER 7 OR, IN THE ALTERNATIVE,
DISMISSING THE CASES PURSUANT 11 U.S.C. § 1112(b)**

K&K Developers, Inc., by its undersigned counsel, respectfully submits this response to the motion by the Acting United States Trustee for an Order Converting the Case to Chapter 7, or, in the Alternative, Dismissing the Case Pursuant to 11 U.S.C. § 1112(b) dated August 2, 2018 [ECF No. 49] (the "Motion"), and respectfully represents as follows.

**BACKGROUND**

1.      On May 8, 2018 (the "Petition Date"), Leticia Rojas (the "Debtor") filed with this Court a voluntary petition for relief (the "Fourth Petition") under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code").

**The Prior Bankruptcy Cases**

2.    The Debtor filed three previous voluntary bankruptcy cases in this Court in the sixteen months preceding the Petition Date.

3.    First, on January 25, 2017, the Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code (Case No. 17-11444) (the "First Case"). By order dated March 29, 2017, the Debtor's First Case was dismissed on the Court's own motion.

4.    Second, on April 12, 2017, the Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code (Case No. 17-17390) (the "Second Case"). By order dated May 31, 2017, this Court dismissed the Debtor's Second Case on motion of the chapter 13 trustee.

5.    Third, on September 20, 2017, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code (Case No. 17-29081) (the "Third Case"). By order dated December 4, 2017, the Debtor's Third Case was dismissed following (i) the Court's issuance of an order to show cause, dated November 15, 2017, why the Third Case should not be dismissed, (ii) Debtor's filing a motion dated November 13, 2017 seeking to dismiss her Third Case; (iii) the chapter 7 trustee's filing of a motion to dismiss the Third Case; and (iv) the filing of a motion dated November 20, 2017 by the Bank of New York Mellon f/k/a The Bank of New York, as successor in interest to JP Morgan Chase Bank, N.A., as Trustee for Structured Asset Mortgage Investments II Inc. Mortgage Pass-Through Certificates Series 2005-AR8 (the "Bank") seeking relief from the automatic stay so that it could proceed with prosecution of a foreclosure action with respect to the real property known as 180 Douglas Road, Far Hills, New Jersey 07931 (the "Far Hills Property").

**Events in this Fourth Bankruptcy Case**

6.      On the Petition Date in the Fourth Case, the Debtor filed a motion seeking to reimpose the automatic stay [ECF No. 3] so as to prevent the Bank from proceeding with a sheriff's sale of the Far Hills Property, which consists of approximately 19 acres of land and an uninhabitable house.  In October 2015, the Debtor entered into a contract to sell the Far Hills Property to K&K, with the sale being subject to the approval by the Borough of Far Hills of a development plan of K&K for the Far Hills Property.  K&K was hoping to construct a multi-unit project at the site that would enable Far Hills to comply with its obligation under New Jersey law to provide affordable housing.  Over a period of nearly three years, K&K expended significant time and money in seeking to obtaining the necessary approvals for the project.  K&K even intervened in existing litigation pending the Superior Court of New Jersey regarding Far Hills' affordable housing obligations.  But as reported in the media, K&K's proposal faced staunch opposition from various parties, including residents of nearby Bernardsville and that municipality itself, who were committed to defeating K&K's proposal.  *See* news stories from *The Bernardsville News* dated February 1, 2018 and June 19, 2018 annexed hereto as Exhibits A and B.  In the meantime, the Bank pursued its foreclosure action against the Far Hills Property, with a sheriff's sale scheduled for May 8, 2018 (the Petition Date in the Fourth Case).

7.      In her motion filed on the Petition Date in the Fourth Case, the Debtor represented that she filed the first three cases in an effort to prevent a sheriff's sale of her residence located at 640 Irvington Avenue, Hillside, New Jersey, but she finally decided to allow a sheriff's sale of that property to proceed.  Debtor further stated in that motion that the sheriff's sale of that property took place on January 24, 2018, and that she was renting that property from the purchaser at the

foreclosure sale. Debtor represented in this motion that she filed the Fourth Case in an attempt to protect her interest in the Far Hills Property from being sold in a sheriff's sale.

8.      By order dated May 8, 2018, the Court denied the Debtor's motion to reimpose the automatic stay in the Fourth Case, directed that a sheriff's sale of the Far Hills Property could proceed, and ordered that any purchaser of the Far Hills Property at the sheriff's sale could take legal action to enforce its rights to possession of the property.

9.      After the sheriff's sale of the Far Hills Property occurred, with the consent of the Bank, this Court subsequently indulged the Debtor by granting her two extensions of her 10-day period in which to redeem the property under New Jersey law. First, by order dated May 17, 2018, the Court extended the Debtor's redemption period for the Far Hills Property to June 8, 2018. Second, by order dated June 8, 2018 (the "Second Extension Order"), the Court extended the Debtor's redemption period for the Far Hills Property to July 9, 2018.

10.    Significantly, Debtor represented in the Second Extension Order that she "has a commitment from a lender to provide a loan in the amount of $2.85 million that can close within 30 days." *See* Exhibit C hereto. Additionally. the Second Extension Order provided that "there shall be no further extensions of the redemption period."

11.    As the July 9, 2018 redemption period neared, the Debtor retained new counsel who, upon information and belief, requested a telephonic conference with the Court that was hastily scheduled after the July 4 holiday and conducted on July 6, 2018. K&K learned of this conference only after it occurred, so it did not have an opportunity to participate in the conference. K&K has been advised that the Debtor's new counsel inquired during that conference whether the Court would further extend the Debtor's redemption period, but the Court responded that it would not do so without the Bank's consent, which consent was not provided.

12.    K&K has also learned that a status conference was held in the Fourth Case in the afternoon on July 9, 2018, at which, upon information and belief, Debtor's new counsel advised the Court that he had been advised that the Debtor was, that very afternoon, on her way to the sheriff with a check to redeem the Far Hills Property.

13.    But the Debtor never made any such payment. The extended deadline for the Debtor to redeem the Far Hills Property expired without a redemption payment having been made. Accordingly, the Debtor no longer holds any interest in the Far Hills Property. This made it impossible for Debtor to sell the Far Hills Property to K&K pursuant to their pre-petition contract.

14.    On August 2, 2018, the Acting United States Trustee (the "UST") filed the Motion seeking conversion of this case to chapter 7 or, in the alternative dismissal of this case.

## THE MOTION

15.    The Motion observes that the Debtor never filed a motion seeking approval of any financing to support a redemption of the Far Hills Property. Motion at ¶ 4.

16.    The Motion notes that the Debtor never filed any operating reports in this case, and that the Debtor has not filed any disclosure statement or plan of reorganization. *Id.* at ¶¶ 5-6.

17.    The Motion states that the critical asset in this case, the Far Hills Property, has been subject to stay relief from the outset of the case. *Id.* at ¶ 15. Accordingly, the Motion argues that it appears that there is a substantial or continuing loss to or diminution of the Debtor's estate, as a complete absence of a reasonable likelihood of rehabilitation, and that cause therefore exists for conversion or dismissal of this case pursuant to section 1112(b)(4)(A) of the Bankruptcy Code. *Id.* at ¶ 15.

18.    The Motion also states that there is "a clear cause for either conversion to chapter 7 or dismissal of the case." *Id.* at ¶ 16.

19.    The Motion contends that conversion to chapter 7 would be in the best interest of creditors because it would result in appointment of an independent trustee who would liquidate assets and investigate whether there are any avoidance actions which might lead to a distribution to creditors. *See id.*

## RESPONSE

20.    K&K agrees that, for the reasons set forth in the UST's Motion and herein, there is more than ample cause in this case for either conversion or dismissal of this case.

21.    Once cause is demonstrated, the court must determine whether conversion or dismissal is in the best interests of creditors and the estate. *See In re SGL Carbon Corp.*, 200 F.3d 154, 159 n. 8 (3d Cir.1999). This determination should consider the interests of all creditors, secured and unsecured. *See In re Hampton Hotel Investors, L.P.*, 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001) (noting courts are required to consider and weigh the totality of facts and circumstances of the individual case when determining what is in the best interests of creditors). The court should compare the creditors' rights in a chapter 7 bankruptcy to the rights they would have under state law upon dismissal. *In re The V Companies and V-S Architects, Inc.*, 274 B.R. 721, 740 (Bankr. N.D. Ohio 2002) (*citing Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.)*, 14 F.3d 240, 243 (4th Cir.1994)). The decision to dismiss or convert is entrusted to the discretion of the bankruptcy court. *See In re SGL Carbon Corp.*, 200 F.3d at 159.

22.    When determining the best interest of creditors and the estate, the interests of the debtor and of holders of administrative claims, including professionals, are not considered because they are not "creditors" as defined in Bankruptcy Code § 101(10). *See In re Acme Cake Co., Inc.*, 2010 WL 4103761, *7 (Bankr. E.D.N.Y. October 18, 2010). Where an estate is administratively

insolvent, such that the appointment of a chapter 7 trustee would only benefit administrative claimants, dismissal is appropriate. Id. at *9. Generally, creditors are not prejudiced by dismissal of a case where they may exercise their rights outside of bankruptcy. *See In re Segal*, 527 B.R. 85, 94 (Bankr. E.D.N.Y. 2015).

23. In this case, the interest of creditors would be best served by dismissal. The Debtor's most valuable assets, her former primary residence and the Far Hills Property, have already been sold in separate sheriff's sales. The UST conducted a 341 meeting in this case on June 13, 2018, without providing any indication that Debtor has other assets that a trustee could liquidate for the benefit of her creditors. Nor is there any indication from her schedules of assets and liabilities or statement of financial affairs filed in this Fourth Case that there are available valuable avoidance actions that a chapter7 trustee could bring under chapter 5 of the Bankruptcy Code.

24. The Debtor did not file this Fourth Case seeking an economic fresh start, and she is no stranger to this Court. Rather, the Debtor filed this Fourth Case to frustrate or reverse the effect of a sheriff's sale of the Far Hills Property, with no financing and no reasonable hope of reorganization. After filing this case, Debtor represented in the Second Extension Order that she "has a commitment from a lender to provide a loan in the amount of $2.85 million that can close within 30 days." It is apparent, however, that this statement was untrue. The Second Extension Order provided that "there shall be no further extensions of the redemption period," but Debtor proceeded to seek another one anyway.

25. It is evident that the Debtor is a serial filer of bankruptcy cases that waste the time and resources of this Court and her creditors. The Debtor already filed a chapter 7 case less than one year ago, and then she successfully sought its dismissal. These filings have unfairly delayed

her creditors who were pursuing their legitimate rights against her properties, and these cases have caused uncertainty and consternation for others. There is no good reason for this to continue.

26.    Each of the Debtor's three recent prior bankruptcy cases was dismissed, without objection from any of her creditors, and so should this one.

## **CONCLUSION**

27.    For the foregoing reasons, K&K respectfully requests that the Court grant the UST's Motion by ordering dismissal of the Fourth Case.

Dated: New York, New York
   September 6, 2018

        RUBIN LLC

        By: /s/ Paul A. Rubin     
          Paul A. Rubin

        345 Seventh Avenue, 21st Floor
        New York, New York 10001
        Tel: 212.390.8272
        Fax: 212.390.8273
        prubin@rubinlawllc.com

        *Attorneys for K&K Developers, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 6, 2018, I caused one copy of the foregoing

Response Of K&K Developers, Inc. To Motion Of The Acting United States Trustee For An Order

Converting The Cases To Chapter 7 Or, In The Alternative, Dismissing The Cases Pursuant 11

U.S.C. § 1112(b) and Service of Papers to be filed with the Clerk, United States Bankruptcy Court,

District of New Jersey, by ECF, and one copy served via ECF and by regular mail postage pre-

paid on each of the persons listed on the following pages.



*/s/ Paul Rubin*
Paul Rubin, Esq.

United States Trustee
United States Department of Justice
Office of the U.S. Trustee
Andrew R. Vara
Acting United States Trustee, Region 3
Peter J. D'Auria, Esq.
One Newark Center, Suite 2100
Newark, NJ 07102

Leonard C. Walczyk. Esq.
Wasserman Jurista & Stolz
110 Allen Road, Suite 304
Basking Ridge, NJ 07920

Denise E. Carlon, Esq.
KML Law Group, PC
Sentry Office Plaza
216 Haddon Avenue, Suite 406
Westmont, NJ 08108

Michael S. Adler, Esq.
Cohen Weiss and Simon LLP
900 Third A venue, 21st Floor
New York, NY 10022-4869

Laura Egerman, Esq.
RAS Crane, LLC
Bankruptcy Department
10700 Abbott's Bridge Road. Suite 170
Duluth, GA 30097

Bruce W. Radowitz, Esq.
636 Chestnut Street
Union, NJ 07083

Rebecca A. Solarz, Esq.
KML Law Group, PC
701 Market Street, Suite 5000
Philadelphia, PA 19106

Brian C. Nicholas, Esq.
KML Law Group, PC
216 Haddon A venue, Suite 406
Westmont, NJ 08108

Hiram I. Arnaud, Esq.
Cohen Weiss and Simon LLP
900 Third A venue, 21st Floor
New York, NY 10022-4869

David E. Mayland, Esq.
Strasser & Associates, PC
7 East Ridgewood Avenue
Paramus, NJ 07652

# EXHIBIT A



Photo by Debbie Weisman

*Sampling the winning shrimp and lobster chowder from Delicious Heights at the St. James Church Chili and Chowder Cook-off in Basking Ridge Saturday night are, from left, Ryan and Cathy Paul and Susana and Andrew Theadore, all of Basking Ridge. For more on the annual benefit, please see "Happenings in the Hills" on page 11. For videos of the event, please visit our website at bernardsvillenews.com.*

# Battle looms over housing

**By W. JACOB PERRY**
*STAFF WRITER*

**FAR HILLS** – Opposition is mobilizing against a borough plan to allow an "inclusionary" 91-unit townhouse complex in the large lot residential zone at the corner of Liberty Corner and Douglas roads.

A crowd estimated at more than 60 people packed the Borough Council meeting on Monday, Jan. 22, as residents from the borough as well as neighboring Bernards Township grilled officials about the rationale for the plan.

The plan, designed to help the borough meet its state-mandated affordable housing obligation, took a step forward when the council approved a Memorandum of Understanding (MOU) with a developer on

## 'Bernards Township is going to be the town that's most drastically affected by this development.'

**LAUREN MANDUKE**
*Attorney*

Monday, Jan. 8, following more than two years of litigation.

Residents who attended the Jan. 22 meeting said in interviews last week that no one in the area was aware of the plan until it was reported in a front page story in this newspaper on Thursday, Jan. 18.

"We felt we should have been given some notice," said Marilyn Chin of Douglas Road in Far Hills. "We were blindsided."

Maria Ramirez of

Belcher Lane said that with the site having virtually no infrastructure like sewers, "Anyone with common sense would agree it's not the place to put it."

"It's like a done deal and they're rushing it through, and it kind of infuriated me and a lot of other people," she said.

Mayor Paul Vallone rejected several of the arguments in an interview on Monday.

"People are very unaware of how (the state's

affordable housing process) works," he said. "This is a state Supreme Court mandate that municipalities can not put off."

"We did not seek this site," he added. "This site came to us."

Vallone said that after the landowner spoke with a developer, the developer filed to "intervene" in a court review of the borough's affordable housing obligation, which left the borough vulnerable to a zoning lawsuit.

He said there was a public misconception that the borough's handling of the matter was "clandestine or secretive." The council has regularly discussed the affordable housing situation "openly and truthfully," he said, and "the site itself has

PLEASE SEE HOUSING, PAGE 4

New businesses coming to B

PAGE 4 Thursday, February 1, 2018     The Bernardsville News     bernardsvillenews.com

# HOUSING: Residents opposing Far Hills project

FROM PAGE 1

been discussed for several months, at Planning Board and Borough Council meetings in public."

"This site is in the talking stage," Vallone stressed. "This is not a done deal."

Nevertheless, residents in the area are exploring legal options and have informally approached the law firm Cole Schotz of Hackensack.

Cole Schotz attorney Lauren Manduke said on Friday, Jan. 26, that she and another lawyer with the firm planned to meet with interested residents soon and potentially represent them formally.

Manduke, who resides on Liberty Corner Road in Bernards Township, said she had been contacted by an "ever-growing list" of people, with the total up to more than 50 residents from 35 homes.

Although her firm was still gathering information, she said there were "plenty of opportunities here to have a strong objection."

She said Borough Planner David Banisch has testified that the proposed complex would have about 260 residents, while the borough's current population is fewer than 1,000.

Also, she said, the complex would occupy only .005 percent of the borough's land mass.

The plan would therefore increase the borough's population by 20 to 30 percent, with the result that "20 to 25 percent of the entire borough population is crammed into .005 percent of the borough's land," she said.

The vast majority of the traffic would traverse Bernards Township, Manduke said. "Bernards Township is going to be the town that's most drastically affected by this development."

At the Bernards Township Committee meeting on Wednesday, Jan. 24, Mayor John Carpenter said the township was reviewing information related to the Far Hills plan and would post it on the municipal web site.

"We are investigating our options regarding that particular proposal," Carpenter said.

By Saturday, Jan. 27, the Far Hills MOU was on the main page of the municipal web site, www.bernards.org, under the label, "News."

The 91 units would be built on an 18.85-acre tract at the northwest corner of Liberty Corner Road and Douglas Road, at the boundary with Bernards. The frontage along Liberty Corner Road extends to Interstate Route 287, which abuts the rear of the property.

Included would be 20 income-restricted rental units that would be applied toward the borough's "Round III" affordable housing obligation through 2025. The other 71 units would be market-priced, which would subsidize the cost of constructing the low-income housing.

## 'We did not seek this site. This site came to us.'

**PAUL VALLONE**
Mayor

Douglas Road and is zoned for 10-acre residential use. Records list the owner as Leticia Rojas of Hillside. But the MOU is with K & K Developers of Short Hills, which, according to officials, has either purchased the site from Rojas or contracted to buy it.

K & K has been described by officials as being a part of Garden Homes, which is owned by the Wilf brothers.

An aerial rendering in the MOU shows the complex having two access drives with Liberty Corner Road and more with Douglas Road. The southernmost access would lead to a loop road for the 71 market-priced units, which would be housed in 15 buildings of three to six units apiece.

The northern-most access, located closer to I-287, would lead to a single, three-story building with 20 income-restricted rental units. There would be no link with the rest of the complex.

Manduke criticized the placement of the income-restricted building, saying it would be "isolated" and "as close to (Route) 287 as possible."

Under a 1975 state Supreme Court ruling, towns across New Jersey are required by the state are required by the state to provide their "fair share" of cost-restricted housing for low- and moderate-income earners.

The state Council on Affordable Housing (COAH) administered the mandate until March 2015 when the state Supreme Court transferred that power to the state Superior Courts. A state advocacy group, the Fair Share Housing Center, has since tried to convince judges to impose more homes than the towns feel are necessary.

The Far Hills case was assigned to Judge Thomas C. Miller in Somerville. In December 2015, K & K "intervened" in the case with a claim that it could provide land necessary for any new affordable housing.

K & K has agreed in the MUO to fund the cost of providing the site with sewage capacity.

At the Jan. 22 council meeting, Borough Attorney Joseph Sordillo said the borough's affordable housing obligation has been set at 75 units, including 24 that were provided in the Polo Club complex in the early 1990s.

The remaining 51, he said, would include 20 at the K & K site, plus units from a possible group home at borough-owned property at 46 Peapack Road, possible rental units at 10 Peapack Road, and an "accessory apartment program."

Sordillo said the next step would be for the borough and Fair Share to strike a settlement agreement that would be presented



Douglas Road forms the border between Far Hills and Bernards Township. Far Hills has designated a site on the road for 91-units of affordable housing.

## 'Thrust Upon Us'

Numerous residents went on to challenge the deal with K & K.

Richard Margolis of Douglas Road questioned why the council did not focus on the village area along Route 202. He said the council could rezone the village and invite developers to build residential housing.

That would "fix it up" and "not upset a lot of constituents," Margolis said.

Sordillo countered that the K & K site was "thrust upon us by litigation." He said towns that fight rather than settle affordable housing lawsuits "have not been successful."

He said that under the system, a developer that intervenes in a housing case can essentially say, "You have to consider this site because I'm your litigant."

Stuart Alboum of Liberty Corner Road, who formerly served on the Planning Board, recalled that Rojas once proposed to expand the existing house by 27,000 square feet. He questioned how Rojas "got so lucky" as to sell the property for a buyer "to do anything other than put up a nice house."

He characterized the intersection of Liberty Corner and Douglas roads as unsafe, saying it is near a sharp curve, has limited site distance and "ices up terribly in the winter."

"Under previous mayors, I was always told, 'We will never develop multi-family homes. We have a 10-acre minimum and we're going to keep it that way.' Many of us moved into this town for that reason.

"This is a major corner entering our town," Alboum added. "There's a sign that says, Welcome to Far Hills, and there's 91 homes. Is that what Far Hills is about? I don't think so."

George Mellendick of Lake Road noted that there is a vacant, 22.86-acre tract next to the K & K tract. He asked if that tract "can go the same way as this."

Sordillo replied that if the borough's population increases above a certain point, the town may be rezoned as urban and identified as compliant with its Round III obligation, it would be immunized against further affordable housing lawsuits until 2025.

Linda Watson of Liberty Corner Road in Bernards Township told the council that the majority of people sitting behind her were probably from her town.

"We are going to feel the impact in our area of Bernards Township more than anyone in the borough of Far Hills ... We will suffer from it immensely," she said.

Julie Arias of Douglas Road in Bernards Township said it appeared the council had not fully explored alternative areas.

"We're not going to stand still," she said. "We're going to fight this, whether we get our own lawyer, we're going to stop this because this is wrong. You guys are accommodating your demands on us, and it is totally wrong."

Vallone, in the interview Monday, said the borough could not simply concentrate its affordable housing needs in the village section. He said the majority of village properties are small private homes, and the borough can't force commercial landlords to switch to a residential use, especially if their businesses are thriving.

"No property owner or builder (in the village) has come forward to satisfy the number we're required to provide by the courts," he said.

The borough is currently negotiating with Fair Share on a settlement agreement, which could lead to a deal being presented to and approved by Judge Miller in "the next month or two," the mayor said.

If the K & K site is included in the deal, Vallone said, any proposed development would undergo a Planning Board review that would require traffic studies, line of sight distance reviews and screening.

"We are very cognizant about how people feel" about preserving the borough's quality of life, he said. "I want them to understand we're trying everything to comply with the requirements but in a way that is as palatable to our residents and our neighbors as possible."

## Property History

The property at 180 Douglas Road was purchased by Rojas in October 2005 for $1.9 million, according to public records.

According to Trulia.com, she listed it for $2.2 million from 2011-13, $1.2 million for two months in 2014, and then $3 million for a single week in June 2015 before it was taken off the market.

The $3 million listing was posted three months after the state Supreme Court ruling that transferred affordable housing oversight to the state Superior Courts.

The Hillside address listed for Rojas is the same as that listed for Leticia, Inc. Bloomberg.com describes Leticia, Inc., as a trucking company that transports contaminated soils and industrial waste, with Rojas being the president and chief operating officer.

# EXHIBIT B

http://www.newjerseyhills.com/bernardsville_news/news/controversial-far-hills-affordable-
housing-plan-still-in-play/article_e3bf53d0-95fd-5b94-9d59-e77d7d66daec.html

FAR HILLS BOROUGH COUNCIL
# Controversial Far Hills affordable housing plan still 'in play'

By W. JACOB PERRY Staff Writer  Jun 19, 2018

FAR HILLS – Fierce opposition from neighboring Bernards Township has not stopped borough officials from continuing to consider a proposed development on Douglas Road as an option to provide state-mandated affordable housing.

"I and the Borough Council will do what's in the best interests of Far Hills and not Bernards Township or anyplace else," Mayor Paul Vallone said in an interview on Thursday, June 14, three days after a public meeting in which the development option came under attack.

Under that option, K & K Developers of Short Hills would raze a house on 18.58 acres at 180 Douglas Road and replace it with 91 housing units, of which 20 would be income-restricted.


Aspen Regency

Brand New Construction

Phase 1 is now Accepting Applications

One Month FREE on Select Leases!
Limited Time Offer. Call Today!

Learn More

The site next to Liberty Corner Road is zoned for 10-acre residential use, meaning no more than one home could normally be built there.

With Douglas Road forming the municipal boundary between Far Hills and Bernards Township, numerous residents from both towns have attacked the proposal and hired a lawyer to fight it.

On Feb. 16, Bernards Township officials hired their own legal counsel to oppose the proposal. Far Hills officials responded by allowing prospective developers of two other sites to also offer affordable housing proposals. Plans for those two sites were presented at Borough Council meetings in April.

K & K, which had not made its own presentation, finally did so at the council meeting on Monday, June 11. According to several accounts, the meeting drew a capacity crowd and became heated.

"The majority were residents of Bernards Township," Vallone said in the subsequent interview. "There were several attorneys present representing people from Bernards Township, and quite frankly, they were very rude.

"It was a very good presentation, and K & K is very much in play for our affordable housing mandate," he said.



Senior Living in NJ

## 'Very Concerned'

Several residents described the Far Hills meeting in far different terms when speaking at the Bernards Township Committee meeting on Tuesday, June 12.

They said the other two Far Hills sites were much closer to rail transit and made more sense than the K & K site.

"The proposal to us seems a matter of convenience" to Far Hills officials, said Nick Marlow of Mount Prospect Road in Bernards. He said their attitude was, "Place houses on the edge of town and the problem goes away."

He warned that high-density housing on Douglas Road would "set a precedent on that side of town."

There was praise for attorney Jonathan Drill, who was hired to represent the township.



Drill "brought up great comments on how the (K & K) plan may be inconsistent with their master plan," said Republican Township Committee candidate John Surano, who noted that he and his GOP running mate, Joseph Esposito, both attended the meeting.

Marlow said the attorney did "an exemplary job."

Paul Damurjian of Douglas Road in Bernards also praised Drill. "Thank you for sending him," he told the committee. "It's important we keep him on the job."

Bernards Township Mayor John Carpenter concurred. "We're committed to the effort and we are very concerned about it, and Mr. Drill will stay on for the duration," he said.

### Housing Options

Towns across New Jersey are required to provide their "fair share" of affordable housing under a 1975 state Supreme Court ruling.

That has led to court battles between towns and a state advocacy group, the Fair Share Housing Center, which typically seeks large obligations.

Talks with Fair Share are ongoing but borough officials have said the affordable housing quota through 2025 will likely be 75 to 80 units. Developers that build income-restricted homes can subsidize each one with a multiple of up to six market-priced homes.

K & K intervened in the borough's case two years ago, leading the council to approve a tentative deal in January to allow redevelopment of 180 Douglas Road. But opposition to the deal opened the door for the two alternative proposals.

On April 9, the council heard from Toll Brothers of Horsham, Pa., which hopes to develop a 190-acre tract on Liberty Corner Road near Route 202 with 113 housing units, of which 24 would be income-restricted.

On April 18, the council heard from Melillo Equities of Gladstone, which has proposed to redevelop the Ludlow Square retail complex at Route 202 and Dumont Road with 139 housing units, of which 51 would be income-restricted, plus increased retail space.

Because Ludlow Square presently includes six income-restricted housing units that

would be razed, the project would provide a net gain of 45 units.

Borough officials have acknowledged that none of the three plans alone would fulfill an obligation of 75 to 80 income-restricted units. As a result, additional sites would need to be developed.

Vallone said there is presently no deadline for the council to select a plan. He said he planned to meet in Somerville soon with state Superior Court Judge Thomas C. Miller, who is overseeing the affordable housing case.

The mayor said borough officials want to finalize their affordable housing obligation before making a selection. As for the projection of 75 to 80 units, "we're hoping to get that reduced," he said.

"We've done an excellent job of being transparent," Vallone said. "No one can say they're not aware of what these builders are doing.

"There's no easy decision for us," he added. "No matter what the decision is, it will be viewed by some as not good for them."

> There's no easy decision for us. No matter what the decision is, it will be viewed by some as not good for them.

MORE INFORMATION



Battle looms over Far Hills housing plan

Far Hills reviews affordable housing alternatives

Far Hills to review controversial affordable housing plan

# EXHIBIT C



UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Denise Carlon
Dcarlon@kmllawgroup.com
KML Law Group, PC
216 Haddon Avenue, Suite 406
Westmont, NJ 08108
THE BANK OF NEW YORK MELLON
F/K/A THE BANK OF NEW YORK as
successor in interest to JP Morgan Chase

In Re:
        Leticia Rojas,

Debtor.

**Order Filed on June 8, 2018
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

Case No:        18-19362 VFP

Judge:  Vincent F. Papalia

## CONSENT ORDER EXTENDING REDEMPTION PERIOD FOR REAL PROPERTY LOCATED AT 180 DOUGLAS ROAD, FAR HILLS, NJ TO JULY 9, 2018

The relief set forth on the following pages two (2) through three (3) is hereby ordered
**ORDERED**.

**DATED: June 8, 2018**

_____
Honorable Vincent F. Papalia
United States Bankruptcy Judge

**WHEREAS** on May 8, 2018 this Chapter 11 Bankruptcy Petition was filed by Debtor, Leticia Rojas; and

**WHEREAS** on May 8, 2018, after the Bankruptcy Petition was filed, the Sheriff of Somerset County sold real property located at 180 Douglas Road, Far Hills, NJ; and

**WHEREAS** the parties disputed whether or not 11 USC 108 serves to extend the state court 10-day redemption period since the Bankruptcy was filed before the sheriff sale; and

**WHEREAS** the parties previously amicably agreed to resolve the dispute by extending the redemption period to June 8, 2018; and

**WHEREAS** the debtor was unable to complete refinancing of the property prior to June 8, 2018 but has a commitment from a lender to provide a loan in the amount of $2.85Million that can close within 30 days; it is

**ORDERED** that the redemption period for real property located at 180 Douglas Road, Far Hills, NJ is hereby extended to July 9, 2018; and

**IT IS FURTHER ORDERED** that the debtor, Leticia Rojas, may redeem the subject property located at 180 Douglas Road, Far Hills, NJ on or before July 9, 2018; and

**IT IS FURTHER ORDERED** that the redemption amount shall include all advances, costs and attorney's fees incurred by secured creditor since entry of the final judgment of foreclosure; and

**IT IS FURTHER ORDERED** that there shall be no further extension of the redemption period. In the event the loan is not paid in full on or before July 9, 2018, secured creditor shall be entitled to dispose of the property however it sees fit.

**CONSENTED AND AGREED TO:**

/s/ Denise Carlon
Denise Carlon, Esq.
KML Law Group, P.C.
Attorneys for THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK as
successor in interest to JP Morgan Chase Bank, N.A. as Trustee for Structured Asset Mortgage
Investments II Inc. Mortgage Pass-Through Certificates Series 2005-AR8


/s/ Bruce Radowitz
Bruce Radowitz, Esq.
Attorney for Debtor, Leticia Rojas